UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MANAGEMENT SOLUTIONS
HOLDINGS, LLC, *et al.*,

    Plaintiffs,

v.

CITY OF SOUTHFIELD,

    Defendant.

Case No. 24-10279
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [10]**

On February 1, 2024, Management Solutions Holdings, LLC, and two of its members, Aaron Morris and Shannon Steel, filed a complaint against the City of Southfield, Michigan, alleging violations of their rights under the Fifth and Fourteenth Amendments to the U.S. Constitution. (ECF No. 1.) Namely, Plaintiffs allege that agents of the City harassed them by ticketing them for not keeping their hotel up to Code. (*Id.* at PageID.5.) In response, the City filed a motion to dismiss on April 8, 2024. (ECF No. 10.) Seven months have passed since the City filed its motion and the Plaintiffs have neither responded nor requested any extension of time to do so. Thus, the City's motion is unopposed. *See* ED. Mich L.R. 7.1(c)(1). For the reasons set forth below, the Court GRANTS the City's unopposed motion to dismiss.

I.

The Court begins with a summary of the facts as alleged in Plaintiffs' complaint.

In 2019, MSH entered into a franchise agreement with Ramada Wyndham Hotels and became proprietors of a hotel in the City of Southfield. (ECF No. 1, PageID.2–3.) Before the hotel officially opened, the City inspected it and gave the Plaintiffs a temporary certificate of occupancy "pending resolution of certain upgrades." (*Id.* at PageID.3.) Plaintiffs then made those upgrades, and in March of 2020, held a grand opening event. (*Id.*)

In the spring of 2020, "agents of the City" began harassing Plaintiffs and interfering with the operation of the hotel by "having the police ticket contractors, having surprise site visits, and failing to approve improvements as being compliant with Code." (*Id.* at PageID.4.) "The harassment culminated in [Steel] and her sister being arrested for an alleged code violation and approximately twenty police officers appearing at the hotel and posting a notice effectively closing the hotel." (*Id.*) Plaintiffs were then sued by Ramada Wyndham for breach of the franchise agreement. (*Id.* at PageID.5.)

Plaintiffs claim "none of the actions by Southfield personnel were done after a court proceeding that provided notice and opportunity to be heard." (*Id.* at PageID.4.) Plaintiffs also assert that these actions were "motivated by improper racial or other animus." (*Id.*) In support of that assertion, Plaintiff says that an employee of the City stated that "we don't like black female entrepreneurs bringing Detroit out to Southfield." (*Id.* at PageID.5.)

2

## II.

In deciding a motion to dismiss under Rule 12(b)(6), the Court "construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When the plaintiff has failed to respond, however, the motion is unopposed. *See* E.D. Mich. LR. 7.1(c)(1).

What that means in this Circuit is not entirely clear. Some cases suggest the motion can be granted for that reason alone because plaintiff has abandoned any potential arguments. *See, e.g.*, *Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table decision) (affirming district court's grant of the defendants' unopposed motion to dismiss and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); *Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[W]here, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived."); *see also Bazinski v. JPMorgan Chase Bank, N.A.*, No. 13-14337, 2014 WL 1405253, at *2 (E.D. Mich. Apr. 11, 2014) (citing cases) ("Claims left to stand undefended against a motion to dismiss are deemed abandoned."). But the Sixth Circuit has also suggested that a district court cannot grant a motion to dismiss for failure to state a claim on the sole ground

3

that a plaintiff has failed to respond pursuant to a local rule. *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).

Thus, for good measure the Court will review the merits of the motion to dismiss to determine whether Defendant has satisfied its burden.

### III.

### A.

As a threshold matter, the City claims that Morris and Steel lack standing to sue for injuries that were allegedly suffered by MSH.

Standing consists of three elements: (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision of the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Here, the City takes issue with whether the individual Plaintiffs have suffered an injury in fact. The City says that "Plaintiff[s] have incorrectly represented that all parties entered into a franchise agreement" with Ramada when really only MSH did. (ECF No. 10, PageID.41.) In support, it attaches a copy of the franchise agreement, which demonstrates that the agreement was only between Ramada and MSH.[1] (ECF

---

[1] The Court may consider this exhibit at this stage of litigation without converting the opinion to one of summary judgment because the franchise agreement is referred to in and central to Plaintiffs' complaint. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (explaining that, at the motion to dismiss stage, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein").

4

No. 10-2, PageID.70.) And so, the City says, to the extent that Morris and Steel now claim they too were harmed when the City caused MSH to breach its contract with Ramada, that is not a cognizable injury sufficient to support Article III standing.

This Court agrees. Here, the Plaintiffs fail to delineate which Plaintiff suffered what injury. The question of standing, however, is an individualized inquiry where each plaintiff "must allege facts sufficient to establish the requisite individualized harm." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 580 (6th Cir. 2016); *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) ("[A]n injury in fact must be both concrete *and* particularized."). A plaintiff "must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Relevant here, "LLC members . . . lack standing to sue in their individual capacities when they have not suffered any injury that is separate and distinct from the injury to the LLC." *Smith v. Tarter*, 305 F. Supp. 3d 733, 740 (E.D. Ky. 2018); *see Dockery v. Szymanski*, 2023 U.S. Dist. LEXIS 24833, at *11 (E.D. Mich. Jan. 24, 2023) (finding that plaintiff lacked standing to sue for injury to his LLC because an LLC is a "distinct legal entity"); *cf. Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990) (finding a "longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation" except in certain circumstances). So, to the extent that Morris and Steel allege they suffered a non-distinct injury derivative of the injury suffered by MSH, they lack standing.

The City also notes that while Morris and Steel were not signatories to the franchise agreement, they did "enter[] into a guaranty with Ramada related to MSH's performance under the franchise agreement." (ECF No. 10, PageID.41; ECF No. 10-1, PageID.176.) But Steel and Morris' status as guarantors likewise does not give them standing. *See Quarles v. City of East Cleveland*, No. 99-3050, 1999 U.S. App. LEXIS 34061 WL 133611, at *5 (6th Cir. Dec. 20, 1999) (per curiam) (finding that a guarantor lacked standing when he "failed to allege any individual injury unrelated to the supposed harm visited upon the corporation itself").

So, even taking Morris and Steel's factual allegations as true, they have not established that they have standing. Accordingly, their claims are dismissed.

### B.

That leaves MSH. It brings a Section 1983 claim against the City alleging two constitutional violations: a violation of substantive due process and a violation of equal protection.[2] In support of its allegations, MSH claims that the agents of the City "shut down Plaintiffs' hotel without the authority of judicial action and thereafter deprived Plaintiffs of access to the property." (ECF No. 1, PageID.6.) Further, it alleges that the City's "agents acting under color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and

---

[2] MSH does not frame its Section 1983 claim as such. Instead, Count I of its complaint just says "Fifth and Fourteenth Amendment Violations" without any reference to Section 1983. But elsewhere in its complaint, MSH does says "claims are alleged under the Fifth and Fourteenth Amendments of the Constitution and under 42 USC 1983." (ECF No. 1, PageID.2.) And indeed, Section 1983 is the statute that provides a private cause of action for constitutional violations. 42 U.S.C. § 1983. So the Court will assume that MSH intended to bring a Section 1983 claim.

6

customs, establishing a de facto policy of deliberate indifference to individuals such as Plaintiffs." (*Id.*)

The Court finds that MSH fails to successfully state a claim for which relief can be granted. First, "[a] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Instead, a local government can only be sued under § 1983 if a plaintiff shows "both that he suffered an injury *and* that the alleged violation was caused by the [local government's] policy or custom." *Novak v. City of Parma, Ohio*, 33 F.4th 296, 309 (6th Cir. 2022).

There are four ways a plaintiff may demonstrate that a municipality had an illegal policy or custom. "The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Here, MSH opts for the fourth route—alleging that the City established an unwritten, "de facto policy of deliberate indifference" towards MSH. (ECF No. 1, PageID.6.) To state a claim based on this sort of "'inaction theory,' where a policy of tolerating federal rights violations is unwritten but nevertheless entrenched," MSH must establish: "(1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct . . . ; and (4) that the defendant's custom was

7

the moving force or direct causal link" that led to "the constitutional deprivation." *See Thomas*, 398 F.3d at 429 (citing *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)) (cleaned up).

As to its substantive due process claim, MSH fails to satisfy this standard.

First, MSH fails to show a clear and persistent pattern of illegal activity. MSH does not articulate what exactly was "illegal" about agents of the City inspecting the hotel for code violations. It does not explain what the hotel or its contractors were ticketed for, or even dispute that the hotel was in violation of City Code. Nor does it explain why the hotel was shut down or argue that the posting of notice "effectively closing" the hotel was unjustified. And while it claims the City had a "de facto policy of deliberate indifference to individuals such as Plaintiffs," (ECF No. 1, PageID.6), it does not identify any other individuals, let alone a single LLC, who were subjected to similar treatment. *See Thomas*, 398 F.3d at 434 (granting summary judgment on § 1983 claim under "unofficial policy or custom" theory in favor of municipal defendant because plaintiff did not "reach beyond the facts of [plaintiff's] case to show any possibility of a pattern"); *Cunningham v. Shelby County*, No. 24-5241, 2024 U.S. App. LEXIS 29430, at *4 (6th Cir. Nov. 19, 2024) ("One alleged violation will not suffice; the claimant at a minimum must show multiple previous incidents of 'similar misconduct.'").

Second, even assuming MSH could show a pattern of illegal activity, it makes no allegations that the City was aware of or tacitly endorsed the illegal conduct. It argues only that "Defendant's *agents* . . . authorized, tolerated, ratified, permitted, or

8

acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of deliberate indifference." (ECF No. 1, PageID.6 (emphasis added).)

Finally, MSH asserts bare legal conclusions that the City's unlawful conduct caused its harm but does not support these assertions with factual allegations. It claims that the City's conduct "effectively ended the proprietorship of Plaintiffs' hotel operation" and caused it to breach its franchise agreement with Ramada. (ECF No. 1, PageID.4–5.) But it does not explain how the City's enforcement of its Code was the moving force or direct causal link that led to this harm. Without more, MSH fails to make out a claim for relief. *See* Fed. R. Civ. P. 12(b)(6).

Next, although not explicitly stated by MSH, the Court understands it to be bringing a selective enforcement claim under the Equal Protection Clause, alleging that the hotel was targeted for inspection by the City because the MSH members who operated the hotel—Steel and Morris—are Black. (ECF No. 1, PageID.4.)

That claim also fails. To prevail on a selective enforcement claim in the Sixth Circuit, the plaintiff must "make at least a *prima facie* showing that similarly situated persons outside her [identifiable group] were not [targeted]." *See Rowe v. City of Elyria*, 38 F. App'x 277, 281 (6th Cir. 2002) (citing *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000)). Here, MSH does not argue that its hotel was targeted for inspection any more than other hotels in the City operated by members of other racial groups. And the single racially charged comment of an unnamed "employee" of the City made at an unspecified time is insufficient give rise to a constitutional violation. *See Gherghel v. Canton Twp.*, 2010 U.S. Dist. LEXIS 54663

at *8 (E.D. Mich. June 1, 2010); *Thaxton v. Strode*, 2008 U.S. Dist. LEXIS 68588, at *8 (W.D. Ky. Sept. 9, 2008).

### C.

The remainder of Plaintiffs' claims arise under state law. (*See* ECF No. 1, PageID.7–10.) A district court may decline to exercise supplemental jurisdiction over claims arising under state law if it has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). And "[a]s a rule of thumb, . . . [w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010).

Thus, having dismissed Plaintiff's Section 1983 claim, the Court declines to exercise supplemental jurisdiction over any claims or issues arising under Michigan law and so dismisses them without prejudice.

### IV.

For the reasons above, the City's motion to dismiss (ECF No. 10) is GRANTED, and the Plaintiffs' complaint (ECF No. 1) is DISMISSED. A separate judgment will follow.

SO ORDERED.

Dated: November 21, 2024

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE